85 F.3d 638
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STATE OF MONTANA, DEPARTMENT OF STATE LANDS, Plaintiff-Appellee,
v.
Daniel GLICKMAN,* Secretary, United States
Department of Agriculture, Defendant-Appellant.
 No. 95-35088.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1996.
Decided May 7, 1996.
 
 Before: WRIGHT, PREGERSON and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 We must decipher the definition of "person" in the Food, Agriculture, Conservation and Trade Act of 1990 (FACT), 7 U.S.C. § 1421 Note 2241 et seq. (repealed 1994). Montana seeks federal disaster assistance benefits for weather-damaged land that it uses in support of public education ("school trust lands"). The state applied for benefits pursuant to the FACT, which has a limited emergency crop loss assistance component. The Secretary of the United States Department of Agriculture (the "Secretary") denied Montana's application because the state's annual gross income exceeded the statute's $2 million gross revenue eligibility cap.
 
 
 3
 Montana sought judicial review of the Secretary's final decision, arguing that with respect to school trust lands it was exempt from the eligibility cap. The district court agreed and granted judgment for the state. The court held that although "[a]t first blush, it would appear the Secretary's determination of the State's ineligibility ... is correct," the Secretary's interpretation conflicted with Congress's intent. We disagree and reverse.
 
 Background: The Regulations
 
 4
 The FACT restricts disaster relief eligibility to "person[s]" whose gross annual revenues do not exceed $2 million. 7 U.S.C. § 1421 Note 2266.[1] It does not define "person." Instead it directs the Secretary to define person as it is defined in the regulations issued pursuant to the Food Security Act of 1985 (FSA), 7 U.S.C. § 1308, for the purpose of FACT eligibility and payment limitations.[2] Id. § 2249(d)(1). It also directs the Secretary to issue regulations regarding fair payment limitations, but does not require the Secretary to look to the FSA for these limits. Id. § 2249(d)(2).[3]
 
 
 5
 The FSA, in turn, instructs the Secretary to define "person" according to certain restrictions. It says:
 
 
 6
 (5)(A) The Secretary shall issue regulations--
 
 
 7
 (i) defining the term "person"; and
 
 
 8
 (ii) prescribing such rules as the Secretary determines necessary to assure a fair and reasonable application of the limitation established under this section.
 
 
 9
 Such regulations shall incorporate the provisions in subparagraphs (B) through (E) of this paragraph [and] paragraphs (6) and (7) ...
 
 
 10
 (B)(i) For the purposes of the regulations issued under subparagraph (A), subject to clause (ii), the term "person" means--
 
 
 11
 * * *
 
 
 12
 (III) a State, political subdivision, or agency thereof.
 
 
 13
 * * *
 
 
 14
 (6) The provisions of this section that limit payments to any person shall not be applicable to land owned by a public school district or land owned by a State that is used to maintain a public school.
 
 
 15
 7 U.S.C. § 1308(5)(A)-(B), (6).
 
 
 16
 Based on this directive, the Secretary issued two types of FSA regulations, those that define person and those that set reasonable payment limitations. See 7 C.F.R. § 1497. Person is defined to include a state. 7 C.F.R. § 1497.3(b)(1)(iii).[4] As directed, the Secretary follows that same definition for the FACT. See id. § 1477.3 ("person shall mean a person as defined in part 1497 of this chapter").[5]
 
 
 17
 Thus, when Montana applied for FACT disaster benefits, the Secretary was required to apply the FSA regulation defining person. See 7 U.S.C. § 1421 Note 2249(d)(1); 7 C.F.R. § 1497.3(b). According to the regulation, Montana is a person. See 7 C.F.R. § 1497.3(b)(1)(iii). Because Montana is a person that has gross revenues in excess of $2 million, the Secretary decided that the state was ineligible to receive disaster benefits. 7 U.S.C. § 1421 Note 2266.
 
 
 18
 Montana, not surprisingly, views the regulations differently. It argues that the Secretary has misinterpreted 7 U.S.C. § 1308. It contends that subsection (6), which exempts school trust land from payment limitations, necessarily modifies the definition of person. In essence, Montana argues that the Secretary has separated the person definition regulations from the payment limitations regulations in an unnecessarily stringent manner that contradicts Congress's intent to provide for public school lands.
 
 Analysis:
 
 19
 The Secretary's interpretation of his regulations is to be given great deference. Dioxin/Organochlorine Ctr. v. Clarke, 57 F.3d 1517, 1525 (9th Cir.1995). "A court should accept the 'reasonable' interpretation of a statute chosen by an administrative agency except when it is clearly contrary to the intent of Congress." Id.; see also Chevron v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984).
 
 
 20
 We believe that the Secretary's interpretation is reasonable. In the FACT, Congress instructed the Secretary to define person in the same way that it is defined in the FSA regulation promulgated pursuant to section 1308. See 7 U.S.C. § 1421 Note 2249(d)(1). That FSA regulation defines person as a state and does not limit payments in any way. See 7 C.F.R. § 1497.3(b)(1)(iii). The next FACT subsection instructs the Secretary to create reasonable limitations. See 7 U.S.C. § 1421 Note 2249(d)(2). It does not instruct the Secretary to incorporate the FSA's payment limitations.
 
 
 21
 Likewise, FSA section 1308(5)(A) instructs the Secretary to define person, to create reasonable payment limitations and to incorporate certain provisions. The provisions to be incorporated fall into two categories: those that address the definition of person (subsections 1308(5)(B)-(E)) and those that address payment limitations (subsections 1308(6) and (7)). The school trust exemption in subsection (6) falls into the category of provisions that concern payment limitations. We hold that it does not modify the definition of person. To read the statute otherwise would require conflating the directives in FACT subsections 2249(d)(1) (defining person) and 2249(d)(2) (creating reasonable limits) into a single order. Thus, Montana, which has gross revenues in excess of $2 million, is ineligible for FACT disaster relief for its school trust lands.
 
 
 22
 Montana contends that this interpretation is clearly contrary to Congress's intent and thus deserves no deference. See Dioxin, 57 F.3d at 1525. It argues vigorously that Congress has exempted school trust lands from payment limitations in many other agricultural statutes and describes fiscal aid for public schools as "one of the predominant tacit goals of Federal farm program legislation."
 
 
 23
 If fiscal aid for public schools is a goal of the FACT, we cannot discern it. Public school trust lands are not mentioned in the statute or in its legislative history. The legislative history of an earlier eligibility cap indicates a different goal: to help small farmers. See 134 Cong.Rec. 20,764 (1988) (statement of Sen. Leahy) ("[T]his legislation ... is targeted toward those who need it most. It will help family farmers."); 134 Cong.Rec. 19,530 (1988) (statement of Rep. Schumer) ("[T]his [$2 million cap] does send a message and sends a signal that we are going to start limiting the very well-to-do.").
 
 
 24
 Montana is correct that Congress has explicitly exempted school trust lands from payment limitations in many other statutes. This does not mean that Congress wished the Secretary to carry on this tradition in the absence of explicit directions. Moreover, the FACT is a different type of statute from the other agricultural acts that provide for school trust lands. None of the other statutes, including the FSA, has a gross revenue eligibility requirement that eliminates all but the smallest farmers. We cannot say that the Secretary's reasonable interpretation clearly violates Congress's intent.
 
 
 25
 Montana's argument is essentially a policy dispute. Montana argues that Congress has often provided special protections for school trust lands in order to help fund public schools and that it should continue to do so. This may be a laudatory goal, but it is not an apparent part of the FACT. Montana should address its argument to Congress, not to the Secretary or the courts.
 
 
 26
 The judgment is REVERSED.
 
 
 
 *
 Daniel Glickman, the current Secretary of the Department of Agriculture, is substituted for Michael Espy. See Fed.R.App.P. 43(c)(1)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 FACT, 7 U.S.C. § 1421 Note 2266:
 Ineligibility. (a) General rule.--A person who has qualifying gross revenues in excess of $2,000,000 annually, as determined by the Secretary of Agriculture, shall not be eligible to receive any disaster payment or other benefits under this chapter.
 
 
 [2]
 FACT, 7 U.S.C. § 1421 Note 2249(d):
 Regulations.--The Secretary of Agriculture shall issue regulations--
 (1) defining the term 'person' for the purposes of this section and section 2266 [the $2 million eligibility cap], which shall conform, to the extent practicable, to the regulations defining the term 'person' issued under section [1308] of the [FSA]....
 
 
 [3]
 FACT, 7 U.S.C. § 1421 Note 2249(d):
 Regulations.--The Secretary of Agriculture shall issue regulations--
 (2) prescribing such rules as the Secretary determines necessary to ensure a fair and reasonable application of the limitations established under this section.
 
 
 [4]
 7 C.F.R. § 1497.3(b)(1): A person is:
 (iii) A State, political subdivision, or agency thereof.
 
 
 [5]
 Another FSA regulation specifies that payment limitations do not apply to a state's school trust land. Id. § 1497.1(f). That regulation was not incorporated into the FACT